UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN McPHERSON,

          Plaintiff,                    CIVIL ACTION NO. 09-11766

          v.                        DISTRICT JUDGE STEPHEN J. MURPHY III

PATRICIA CARUSO, BLAINE          MAGISTRATE JUDGE MARK A. RANDON
LAFLER, BARBARA MEAGHER,
JOHN KERNEY, DIANA MARBLE,
JOHN DOE and JANE DOE,

          Defendants.
_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS (DKT. NO. 30)
## AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19)

### I.   INTRODUCTION

Plaintiff John McPherson ("Plaintiff"), a Michigan prisoner, brought this 42 U.S.C. §

1983 action alleging that multiple defendants were deliberately indifferent to his medical needs

in violation of the Eighth Amendment.  Presently before the Court are two dispositive motions:

(1) the motion to dismiss of John Kerney, N.P. ("Kerney") and Diana Marble, N.P. ("Marble")

(collectively "the CMS Defendants") (Dkt. No. 30), and (2) the motion for summary judgment of

Patricia Caruso ("Caruso"), Blaine Lafler ("Lafler") and Barbara Meager ("Meager")

(collectively "the MDOC Defendants") (Dkt. No. 19).  The CMS and MDOC Defendants seek

dismissal of Plaintiff's Complaint on the ground that Plaintiff failed to properly exhaust his

- 1 -

administrative remedies.[1]  Though ordered to do so, Plaintiff failed to respond to either motion.

(Dkt. Nos. 26, 31)  Pursuant to 28 U.S.C. § 636(b)(1)(B), the motions were referred to the

undersigned for a Report and Recommendation.  (Dkt. Nos. 7 and 16)  Since the undersigned

finds that Plaintiff failed to properly exhausted his administrative remedies, it is

RECOMMENDED that both motions be GRANTED.  It is further RECOMMENDED that any

John Doe and Jane Doe defendants be dismissed, requiring dismissal of the entire case if this

Report and Recommendation is accepted.

## II.   STATEMENT OF FACTS

### A.   *Background*

At all times relevant to this case, Plaintiff has been incarcerated at the Pine River

Correctional Facility ("SPR") in St. Louis, Michigan, or the Carson City Correctional Facility

("OTF") in Carson City, Michigan.  Plaintiff alleges he was transferred to SPR on December 22,

2006 with a clean bill of health.  (Dkt. No. 1, ¶ 29)  According to Plaintiff, in 1997, the EPA

found high levels of the pesticide DDT in the Pine River and began an investigation.  (Dkt. No.

1, ¶ 15)  Plaintiff alleges that the Pine River is contaminated with para-chlorobenzene sulfonic

acid (p - CBSA) – a byproduct of DDT which was found in the wells of St. Louis City drinking

water at levels up to 11 times greater than the EPA's safety threshold.  (Dkt. No. 1, ¶ 21)

---

[1] The MDOC Defendants also seek dismissal on three other grounds: 1) that they had no personal involvement in the matters alleged in Plaintiff's Complaint; 2 ) that there is no genuine issue of material fact to support Plaintiff's deliberate indifference claim, and 3) that they are entitled to qualified immunity.  While each these alternative grounds for dismissal have merit, they need not be addressed, as it is clear that Plaintiff failed to properly exhaust his administrative remedies.

Plaintiff alleges that the St. Louis prisons (including SPR), which hold about 3000 inmates, were notified of the contamination but did nothing, except place bottled water in the prison store for those inmates who could afford to purchase it.  (Dkt. No. 1, ¶ 28)  He further alleges that SPR's drinking water, and the water used in food preparation, was tap water derived from the City of St. Louis.  (Dkt. No. 1, ¶ 28)

As a result of his exposure to this "contaminated" water, Plaintiff claims he contracted H. Pylori.[2]  (Dkt. No. 1, ¶ 34)  Plaintiff claims that though tested for H. Pylori, he was never advised of his positive result or treated for the bacteria.[3]  (Dkt. No. 1, ¶ 35)  Therefore, Plaintiff sued Caruso, the Director for the Michigan Department of Corrections ("MDOC"), for failure to close SPR after it became known "that the water used at the facility was contaminated with DDT and other harmful chemicals to human beings"; Lafler (an MDOC Warden) and Meager (an MDOC Deputy Warden) for failure to provide all prisoners with bottled water; and Kerney and Marble for failure to inform Plaintiff that he tested positive for H. Pylori and provide adequate medical treatment.  Plaintiff's lawsuit seeks monetary damages and injunctive relief.

**B.    *The MDOC's Grievance Procedure***

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 19,

---

[2] H. Pylori is a species of bacteria that causes gastritis and pyloric ulcers and is also associated with stomach cancer.  Dorland's Illustrated Medical Dictionary 840 (31st ed. 2007).

[3] Subsequent stool cultures taken from Plaintiff were negative for H Pylori (Dkt. No. 1, ¶ 54), however, Plaintiff claims the stool culture test is not definitive.

- 3 -

Ex. E5).  The Policy was last updated on March 5, 2007, and became effective for all grievances,

including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure.  Prior to filing a grievance

at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff

member involved.  A prisoner may file a grievance at the next step if he is dissatisfied with the

response received at the previous step, or if a timely response is not received.  In particular, as it

relates to filing a Step III grievance,[4] the Policy requires that:

> FF.    [t]he grievant must **send** a completed Step III grievance,
> using  the Prisoner/Parolee Grievance Appeal form (CSJ-
> 247B), to the Grievance and Appeals Section **within ten
> business days after receiving** the Step II response. . .

(Emphasis added).

Further, in outlining what should be included in a grievance, the Policy requires, in part,

that prisoners adhere to the following procedural rules:

> R.    The issues should be stated briefly and concisely.
> Information provided is to be limited to the facts involving
> the issue being grieved (i.e., who, what, when, where, why,
> how).  Dates, times, places, and **names of all those
> involved in the issue being grieved are to be included**.

(Emphasis added).

---

[4] While the CMS Defendants' claim of untimeliness relates to both Plaintiff's Step I and
Step III Grievance Appeal, the Step I Grievance was answered without raising Plaintiff's
procedural default (untimeliness).  As such, only the claim related to the timeliness of Plaintiff's
Step III Appeal (which was raised in the Step III response) should be considered.  *See Vandiver
v. Correctional Medical Services, Inc.,* 326 Fed. Appx. 885, 2009 WL 1175153 (6th Cir. 2009*)*
quoting *Grear v. Gelabert*, No. 07-cv-203, 2008 WL 474098 at * 2, n. 1 (W.D. Mich. Feb. 15,
2008) ("As long as the 'procedural default' rejection is clear, a subsequent §1983 claim based on
the grievance will be subject to dismissal for failure to properly exhaust.")

C.    *Plaintiff's Grievance*

Plaintiff filed a single grievance in connection with the allegations made in his

Complaint.  On November 20, 2007 Plaintiff filed grievance OTF 2007-11-00920-12Z ("the

Grievance") (Dkt. No. 19, Ex. E2).  At Step I, the Grievance read, in its entirety, as follows:

> On the above date 11-12-07 I seen P.A. Diana Marble, during my
> visit to healthcare, I ask the P.A. could I have a test done for water
> contamination because I had just transferred here at OTF (Carson
> City) from SPR (Pine River) where the water was, and still is
> contaminated.  She (P.A.) immediately told me that they don't do
> that here at (OTF), and that there's nothing wrong with me or the
> water at (SPR) I know for a fact that numerous people that last
> (SPR) were tested positive for H. Pylory (sp). I was there a[t]
> (SPR) for a year, and I've been drinking and bathing with that
> water for a year, now I'm constantly feeling pain and having dizzy
> spells, stomach problems, and it's hard for me to use the bathroom
> (#2).  I'm demanding to be tested for H. Pylory (sp) immediately.

The Grievance named only Marble – it did not name, or otherwise describe, any other individual

subsequently named in this lawsuit.

D.    ***January 2008 Calendar and Plaintiff's Step III Grievance Appeal***



After                                                            filing a Step II

Appeal, Plaintiff                                               received OTF's Step

II response.  The Step II response was returned to the Grievant on January 16, 2008.  (Dkt. No. 19, Ex. E2)  Therefore, Plaintiff was required (by § FF of the Policy) to send his Step III Appeal to the MDOC's Director's office in Lansing, Michigan by January 31, 2008.[5]  Plaintiff's Step III Appeal was received by the MDOC on February 20, 2008 and was rejected as untimely by the Bureau of Health Care Services. (Dkt. No. 19, Ex. E2)  Plaintiff acknowledges that his Step III Grievance Appeal was rejected as untimely. (Dkt. No. 1, ¶ 59)

### III.  ANALYSIS

**A.  *The Effect of Plaintiff's Failure to Respond to Defendants' Motion to Dismiss***

Local Rule 7.1 (b) states that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available."  "[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."  *Jourdan v. Jabe*, No. 90-1850, slip op. at 1-2 (6th Cir. Oct. 9, 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

On August 20, 2009, the MDOC Defendants filed their motion for summary judgment. (Dkt. No. 19)  The CMS Defendants filed their motion to dismiss on October 20, 2009. (Dkt. No. 30)  The next day (August 21 and October 21), the undersigned ordered Plaintiff to file a response to the motions on or before October 21, 2009, and November 30, 2009, respectively.

---

[5] The Policy does not contain a procedure for the computation of days.  However, the Federal Rules of Civil Procedure require the first day of the event (i.e., January 16, 2008) be excluded from the computation period.  Fed. R. Civ. P. 6(a)(1).  In addition, the common understanding of "business days" excludes weekends; therefore, 10 business days from January 16, 2008, is January 31, 2008 (January 21, 2008 was the MLK Holiday (see calendar)).

(Dkt. No. 26)  To date, however, Plaintiff has not filed a response to either dispositive motion. Therefore, the motions may be deemed unopposed. *Humphrey v. U.S. Attorney General's Office*, 279 Fed.Appx. 328, 2008 WL 2080512 (6th Cir., May 15, 2008).  Notwithstanding the lack of opposition, both motions are still well-taken in light of the analysis set forth below.

**B.**     ***Standard of Review***

      **1.**     ***Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(a)***

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266 (1994).  However, prisoner suits, alleging constitutional deprivations while incarcerated, are subject to the additional prerequisite of satisfying the administrative exhaustion requirements of 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

C.      *The Prison Litigation Reform Act*

    1.      *The Meaning and Purpose of Proper Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted."  42 U. S. C. § 1997e(a).  The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting, *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.*  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002).  As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.

*Woodford,* 548 U.S. at 95.  Therefore, an untimely or otherwise improper grievance does not satisfy the PLRA exhaustion requirement.

The sanction for failure to exhaust is best illustrated by the Sixth Circuit's recent opinion affirming a district court's dismissal of a prisoner's §1983 claim.  *Sullivan-El v. Pramstaller (*cited by the Sixth Circuit as *Sullivan v. Kasajaru*), 2007 WL 2701949 (E.D. Mich.), *aff'd*, 316 Fed.Appx. 469 (6th Cir. 2009).[6]  In his grievance, Sullivan-El had complained that "Health services at NRF" had improperly denied him medication for his blood pressure and urinary problems.  However, his subsequent lawsuit was filed against several individually named medical personnel.  On reconsideration, the district court dismissed the case for failure to exhaust administrative remedies as to the medical personnel, and Sullivan-El appealed.  The Sixth Circuit held:

> The Defendants moved for reconsideration, arguing that when Sullivan filed his grievance, MDOC policy explicitly required him to name each person against whom he grieved.  See Policy Directive No. 03.02.130. . . We agree and thus affirm. (Citations omitted)

*Sullivan-El*, 316 Fed.Appx. at *470.  The MDOC policy referenced in *Sullivan-El* was a previous version of the Policy at issue herein and contains the identical language requiring prisoners to name each person involved with the grievance.

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints.  However, like the instant motions, failure to exhaust may still be raised as an affirmative defense.

---

[6] The Sixth Circuit opinion is attached as Exhibit B to Docket Number 30.

2.     *Plaintiff Failed to Properly Exhaust his Administrative Remedies*

Plaintiff failed to properly exhaust the Grievance in two ways.  First, Plaintiff's Step III Appeal was untimely.  The MDOC clearly notified Plaintiff of the procedural default by rejecting the appeal as untimely.  (Dkt. No. 19, Ex. E2)  Therefore, Plaintiff's "§1983 claim based on the grievance. . .[is] subject to dismissal for failure to properly exhaust." *Vandiver v. Correctional Medical Services, Inc.,* 326 Fed.Appx. 885, 2009 WL 1175153 (6th Cir. 2009*)* quoting *Grear v. Gelabert*, No. 07-cv-203, 2008 WL 474098 at * 2, n. 1 (W.D. Mich. Feb. 15, 2008).  Second, the Grievance named only Marble, and thus, did not properly exhaust his administrative remedies against Defendants Kerney, Caruso, Lafler or Meager.  *Sullivan-El*, 316 Fed.Appx. at *470.  Accordingly, Plaintiff's claims should be dismissed for failure to properly exhaust his administrative remedies.

D.     *The Unserved and Unnamed Defendants Should be Dismissed*

Finally, as to the remaining John Doe and Jane Doe defendants, it is recommended that they be dismissed without prejudice.[7]  In general, "the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F.Supp.2d 1085, 1093 (W.D.Mich. 2001).  "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, *2 (E.D.Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D.Mass. 1994).  Under Fed. R. Civ. P. 4(m), defendants must be served within 120 days of filing the complaint.  Here, Plaintiff has failed to identify or serve the John Doe defendants and

---

[7]  These unnamed defendants could also be dismissed because of Plaintiff's failure to exhaust his administrative remedies.

this case has been pending for over 120 days (since May 27, 2009); thus, it is recommended that the unnamed Defendants be dismissed without prejudice.  *Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449, *1 (E.D. Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D. Mich. 2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001).  This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

## IV.   RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the motion to dismiss filed by the CMS Defendants (Dkt. No. 30) and the motion for summary judgment filed by the MDOC Defendants (Dkt. No. 19) be GRANTED.  It is further RECOMMENDED that the John Doe and Jane Doe defendants be dismissed, requiring dismissal of the entire case if this Report and Recommendation is accepted.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  January 15, 2010

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 15, 2010, by electronic and/or ordinary mail.

S/Barbara M. Radke
Judicial Assistant